UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LETREESHA GAONA,<br><br>Defendant. | Case No. CR18-78RSL<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |

This matter comes before the Court on defendant Letreesha Gaona's "Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)." Dkt. #34. The government has also filed a "Motion to File a Brief in Excess of Twelve Pages" (Dkt. #37) and a "Motion to Seal Exhibit A to Government's Response" (Dkt. #39). The Court, having considered the motions, exhibits, and the record contained herein, finds as follows:

### I.   PROCEDURAL MOTIONS

As a threshold matter, the Court finds that compelling reasons justify sealing Exhibit A to the government's response. Accordingly, the government's motion to seal (Dkt. #39) is GRANTED. The government's motion to file an overlength brief (Dkt. #37) is also GRANTED.

### II.   FACTUAL BACKGROUND

Defendant is a 41-year-old inmate currently detained at the Federal Detention Center ("FDC") SeaTac. In 2018, defendant pled guilty to one count of attempted bank fraud in violation of 18 U.S.C. § 1344, and one count of aggravated identity theft in violation of 18

ORDER GRANTING DEFENDANT'S
MOTION FOR COMPASSIONATE RELEASE - 1

U.S.C. § 1028A. Dkt. #18. On September 7, 2018, defendant was sentenced to 37 months' imprisonment with four years of supervised release. Dkt. #28. Defendant is currently scheduled for release from the custody of the Federal Bureau of Prisons ("BOP") on February 14, 2021. She is currently eligible for Residential Reentry Center ("RRC") placement on or around August 14, 2020 pursuant to 18 U.S.C. § 3621(e) and BOP Program Statement 5331.02.

### III.   LEGAL FRAMEWORK

The compassionate release statute provides narrow grounds for defendants in "extraordinary and compelling" circumstances to be released from prison early. See 18 U.S.C. § 3582(c). The First Step Act of 2018 amended the procedural requirements governing compassionate release. See id. Prior to the First Step Act's passage, only the Director of the BOP could bring motions for compassionate release. The Director rarely filed such motions. See, e.g., United States v. Brown, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019). Congress amended the statute to allow defendants to directly petition district courts for compassionate release. As amended, 18 U.S.C. § 3582(c)(1)(A) states in relevant part,

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case—
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> > >
> > > > (i) extraordinary and compelling reasons warrant such a reduction; . . .
> > > >
> > > > (ii) . . .

ORDER GRANTING DEFENDANT'S
MOTION FOR COMPASSIONATE RELEASE - 2

and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission[.]

Prior to passing the First Step Act, Congress directed the Sentencing Commission to promulgate a policy statement defining "extraordinary and compelling reasons" in the compassionate release context. <u>See</u> 28 U.S.C. § 994(t).  Section 994(t) provides,

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in [18 U.S.C. § 3582(c)(1)(A)], shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.  Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

The Sentencing Commission implemented this directive from Congress with a policy statement—U.S.S.G. § 1B1.13.  In relevant part, the policy statement provides,

> **Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)**
>
> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction;
> . . .
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) The reduction is consistent with this policy statement.
>
> **Commentary**
>
> **Application Notes:**
>
> 1. **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
>    (A) **Medical Condition of the Defendant**—

ORDER GRANTING DEFENDANT'S
MOTION FOR COMPASSIONATE RELEASE - 3

  (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

  (ii) The defendant is—

    (I) suffering from a serious physical or medical condition,

    (II) suffering from a serious functional or cognitive impairment, or

    (III) experiencing deteriorating physical or mental health because of the aging process,

  that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) **Family Circumstances.**—

  (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

  (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

ORDER GRANTING DEFENDANT'S
MOTION FOR COMPASSIONATE RELEASE - 4

2. **Foreseeability of Extraordinary and Compelling Reasons.**—For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment.  Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

3. **Rehabilitation of the Defendant.**—Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.

4. **Motion by the Director of the Bureau of Prisons.**—A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A).  The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant meets any of the circumstances set forth in Application Note 1.  The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.

This policy statement shall not be construed to confer upon the defendant any right not otherwise recognized in law[.]

U.S.S.G. § 1B1.13.

The Sentencing Commission has not updated its policy statement to reflect the amendments of the First Step Act.  See, e.g., Brown, 411 F. Supp. 3d at 449 n.1 ("As district courts have noted often this year, the Sentencing Commission has not amended the Guidelines following the First Step Act and cannot do so until it again has four voting commissioners." (citations omitted)).  However, the First Step Act renders some provisions of the Commission's outdated policy statement obsolete, including that compassionate release "may be granted only upon motion by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 cmt. n.4; see also United States v. Haynes, No. 93-CR-1043 (RJD), 2020 WL 1941478, at *11 (E.D.N.Y. Apr. 22,

ORDER GRANTING DEFENDANT'S
MOTION FOR COMPASSIONATE RELEASE - 5

2020) ("The heart of the matter . . . is that many of these policy statements . . . not only pre-date the [First Step Act] amendment of § 3582(c) but also continue to reference expressly BOP's *pre-FSA* role as exclusive gatekeeper, which of course the [First Step Act] eliminated."). From this discrepancy emerges a split among district courts as to whether the Court, rather than the BOP Director, can determine pursuant to U.S.S.G. § 1B1.13 cmt. n.1(D) that "there exists in defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." See United States v. Cantu, 423 F. Supp. 3d 345, 350 (S.D. Tex. 2019) (quoting U.S.S.G. § 1B1.13 cmt. n.1(D)).

The government argues that the policy statement set forth in U.S.S.G. § 1B1.13 binds the Court's interpretation of "extraordinary and compelling" reasons. See Dkt. #38 at 8-9. This Court has rejected that position. See United States v. Van Cleave, Nos. CR03-247-RSL, CR04-125-RSL, 2020 WL 2800769, at *3-5 (W.D. Wash. May 29, 2020). For the reasons set forth in detail in Van Cleave, "the Court finds the guidance of U.S.S.G. § 1B1.13 persuasive, but not binding." Id. The Court will exercise its discretion to consider "extraordinary and compelling" circumstances that may exist beyond those explicitly identified by the Sentencing Commission in its outdated policy statement. Id.

### IV. DEFENDANT'S CIRCUMSTANCES

#### a. Exhaustion Requirement

Before the Court can consider the merits of defendant's motion, it must determine whether she has met the statutory exhaustion requirement for compassionate release. See 18 U.S.C. § 3582(c)(1)(A). The parties agree that defendant satisfied this requirement by filing a request with the Warden of FDC SeaTac on April 29, 2020, which was denied on May 29, 2020. See Dkt. #34-5 (Ex. 5). Finding that defendant has exhausted her administrative remedies, the Court will consider the merits of her motion for compassionate release.

#### b. "Extraordinary and Compelling" Circumstances

Defendant's motion for compassionate release is based primarily upon her heightened risk of developing serious complications if she contracts COVID-19 while incarcerated at FDC SeaTac. The Court need not reiterate the widely-known information regarding the symptoms of

ORDER GRANTING DEFENDANT'S
MOTION FOR COMPASSIONATE RELEASE - 6

1  COVID-19 and the devastating global impact of the virus.  COVID-19 has created
2  unprecedented challenges for federal prisons, where inmate populations are large and close
3  contact between inmates is unavoidable.  As of July 13, 2020, the BOP reports 3,112 federal
4  inmates and 259 BOP staff have active, confirmed positive COVID-19 test results.  See
5  COVID-19 Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited
6  July 13, 2020).  Since the BOP reported its first case in late March 2020, at least ninety-five
7  federal inmates and one BOP staff member have died from the virus.  Id.  Luckily, there have
8  been no confirmed inmate or BOP staff cases at FDC SeaTac.  That said, while the BOP has
9  undertaken efforts to prevent and control outbreaks of the virus, the Court agrees with defendant
10 that given the nature of COVID-19, the possibility of an outbreak at FDC SeaTac remains high.

11        The Court does not discount the dangers associated with COVID-19, nor the difficulties
12 prisons face in preventing and containing outbreaks.  However, the Court does not believe that
13 "extraordinary and compelling" circumstances are established by "the mere elevated risk of
14 contracting a pandemic virus in prison, even if such a higher risk exists."  Riley v. United States,
15 Nos. C19-1522 JLR, CR14-0113JLR, 2020 WL 1819838, at *7 (W.D. Wash. Apr. 10, 2020).
16 Therefore, the question is whether defendant's additional circumstances support compassionate
17 release.

18        A review of defendant's BOP medical records indicates that she has recently suffered
19 from multiple health issues.  She has been diagnosed with several acute respiratory infections
20 over the last few years, see Dkts. #34-1 (Ex. 1), #34-2 (Ex. 2), #34-3 (Ex. 3), and has
21 complained of asthma, though her records do not indicate whether she has been formally
22 diagnosed, see Dkt. #34-4 (Ex. 4).  The government argues that defendant has failed to adduce
23 evidence suggesting that she is at greater risk for complications from COVID-19.  The Court
24 disagrees.  The Court has encountered defendants in recent months with health conditions more
25 severe than the defendant's here.  However, defendant has presented evidence that her
26 respiratory-related health issues may heighten her risk for serious complications if she contracts
27 COVID-19 while incarcerated.  See, e.g., People with Moderate to Severe Asthma, CDC,
28

ORDER GRANTING DEFENDANT'S
MOTION FOR COMPASSIONATE RELEASE - 7

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last visited July 13, 2020); see also Dkt. #34-6 (Ex. 6).

Moreover, the Court views defendant's circumstances holistically. Defendant is in the unique position of having approximately seven months remaining on her sentence. Only one month remains before defendant is eligible for RRC placement. If released from prison, defendant is amenable to spending a 180-day term in the RRC before commencing supervised release. Given defendant's health issues, and the short remaining term of her sentence, the Court finds defendant has met her burden to demonstrate that "extraordinary and compelling reasons" warrant her compassionate release. 18 U.S.C. § 3582(c)(1)(A)(i).

### c. Additional Considerations

Before the Court can grant defendant's request for compassionate release, however, it must also find that she "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13. The government asserts that defendant's record precludes such a finding.[1] Dkt. #38 at 13-14. The offenses for which defendant has served a term of imprisonment are very serious, and defendant has a history of committing crimes of fraud. See PSR at ¶¶ 37-40, 48. However, the Court notes that defendant's past offenses were fueled by her addiction and substance abuse issues. Id. at ¶¶ 69-70. Defendant has recently demonstrated some prosocial behavior, including completing the Residential Drug Abuse Program ("RDAP") and earning her GED while incarcerated. Dkt. #34-8 (Ex. 8). Defendant's prison disciplinary record is imperfect, but contains only minor, nonviolent infractions.[2] See Dkt. #34-7 (Ex. 7).

---

[1] The government also speculates that defendant might fail to comply with social distancing guidelines, and accordingly endanger the community's health. Dkt. #38 at 14. The Court does not view this as a basis for denial of defendant's motion. Defendant's health issues place her at heightened risk for COVID-19, and she has every incentive to engage in social distancing.

[2] Defendant was previously released to RRC placement in August 2019, but was returned to custody after leaving the RRC for four hours and talking about stolen property, drugs, and prostitution. See Dkt. #34-7 (Ex. 7). The nature of this infraction is troubling, but non-violent. If the Court again releases defendant to RRC placement, her ability to remain at the RRC will depend on her continued willingness to comply with all conditions of release.

ORDER GRANTING DEFENDANT'S
MOTION FOR COMPASSIONATE RELEASE - 8

In addition, prior to granting compassionate release, the Court must assess whether a sentence reduction to time served is consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a).  See 18 U.S.C. § 3582(c)(1)(A).  Section 3553(a) requires the Court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)," which requires that a sentence reflect the seriousness of and provide just punishment for the offense.  Id.  Again, the offenses that led to defendant's current term of imprisonment are serious.  But she has served most of her term of imprisonment for those offenses, she now has seven months remaining on her sentence, and she will be eligible for RRC placement in approximately one month.

Considering these circumstances, the Court intends to order defendant's immediate release to RRC placement for a term of 180 days.  The Court is satisfied that releasing defendant to RRC placement one month early will (1) not endanger the safety of any other person or the community within the meaning of 18 U.S.C. § 3142(g) and (2) satisfy the objectives of 18 U.S.C. § 3553(a).

## V.    CONCLUSION

For all the foregoing reasons, defendant's Motion for Compassionate Release (Dkt. #34) is GRANTED.  Additionally, the government's motion to seal (Dkt #39) and motion to file an overlength brief (Dkt. #37) are GRANTED.

IT IS HEREBY ORDERED that defendant's custodial sentence be reduced to time served and that defendant's remaining term of incarceration be converted into a 180-day RRC placement as an additional condition of supervised release.  All other provisions of sentencing remain as previously set.  Upon completion of her term in the RRC, defendant shall begin serving the four-year term of supervised release previously imposed by the Court.

IT IS FURTHER ORDERED that defendant be released from FDC SeaTac immediately but no later than within 24 hours of the entry of this Order.  Defendant shall contact the United States Probation Office in Seattle within 24 hours of her release and follow its instructions.  Finally, upon release from custody, defendant shall self-quarantine for a period of 14 days.

IT IS SO ORDERED.

DATED this 14th day of July, 2020.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING DEFENDANT'S
MOTION FOR COMPASSIONATE RELEASE - 10